UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **ENRIQUE OJEDA** : | **CIVIL ACTION NO.:** |
| : | **3:13-cv-00877-WWE** |
| **Plaintiff,** : | |
| vs. : | |
| : | |
| **NEOPOST USA INC.** : | |
| : | **OCTOBER 20, 2015** |
| **Defendant.** : | |

## FOURTH AMENDED COMPLAINT

### I. PRELIMINARY STATEMENT

1. The Plaintiff, ENRIQUE OJEDA, brings claims against his former employer, NEOPOST USA INC. ("DEFENDANT"). Defendant markets its Neopost and Hasler brands of mailing and shipping solutions via a network of dealers and direct-sales channels throughout the United States. Defendant supplies technologically advanced solutions for mailing, folding/inserting and addressing as well as logistics. Plaintiff brings this action against Defendant for violation of: (1) the Fair Labor Standards Act's overtime pay provisions, 29 U.S.C. §207, pursuant to 29 U.S.C. §216(b) (together "FLSA"): (2) for violation of Connecticut's overtime and weekly pay provisions, Conn. Gen. Stat. §§31-58(f), 31-58(i), 31-60(a), 31-71a through 31-71c and 31-76c, pursuant to Conn. Gen. Stat. §§31-68(a) and 31-72 (all Connecticut statutes collectively referenced hereafter as "§31-68(a)") by reason of Defendant's failure to pay Plaintiff overtime compensation as required by those statutes: and (3) for violation of FLSA §15(a)(3), 29 U.S.C. §215(a)(3) in that it first disciplined and then terminated him on or about February 12, 2013 in order to interfere with, restrain and deny Plaintiff Ojeda's rights to file a complaint under the FLSA.

2. The Plaintiff requests a trial by jury on all issues triable to a jury.

### II. JURISDICTION

3. This Court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1331 (federal question), 42 U.S.C. § 2003 *et seq.* and 42 U.S.C. § 1981. Plaintiff also requests this Court to exercise supplemental jurisdiction over their state law claims pursuant to 28 U.S.C. § 1367.

**III.    VENUE**

4. Pursuant to 28 U.S.C. § 1391(b)(1) and (2), venue is proper within this District because the Defendant is located in Connecticut and all of the conduct underlying the Plaintiff's claims occurred in Connecticut.

**IV.    PARTIES**

5. Plaintiff, **ENRIQUE OJEDA,** was a resident of Derby, Connecticut at the time this action was filed, and is now a resident of Stratford, Connecticut. Plaintiff held the position of Leasing Administrator (Team Lead) at the time Defendant terminated him on February 12, 2013.

6. Defendant's primary place of business is located at 478 Wheelers Farms Road, Milford, Connecticut 06461. During the relevant time period, Defendant was an employer within the meaning of FLSA, § 31-68(a) and the FMLA.

**V.    FACTS**

**Plaintiff ENRIQUE OJEDA**

7. The Plaintiff, Enrique Ojeda, first began working for Defendant on April 1, 2009, as a Leasing Administrator being paid $16.83 per hour. Plaintiff was eligible for and paid overtime pay for any hours worked over 40 in a week in this position.

8. On August 15, 2011, Plaintiff was promoted to Sr. Lease Administrator (Team Lead). In this position Plaintiff was paid an annual salary of $47,000 and was eligible for an annual bonus targeted at 10% of base salary. After August 15, 2011, Plaintiff was no longer paid overtime for any hours worked over 40 in a week. Plaintiff was an employee entitled under the FLSA and § 31-68(a) to receive overtime wages for any work in excess of 40 hours worked in a workweek. Plaintiff's entitlement to overtime premium wages under the FLSA and § 31-68(a) was well-known to Defendant and willfully ignored by Defendant.

9. From the time that Plaintiff undertook the job duties of the Sr. Lease Administrator (Team Lead) position, he regularly worked a minimum of 60 hours per week; on occasion he worked more than 60 hours in a single workweek. He was never paid one and one-half times his regular rate as required by law for the hours in excess of 40 worked in a week.

10. Despite his status as a salaried employee in the Sr. Lease Administrator (Team Lead) position, Plaintiff was initially required to record his hours worked on a timesheet and later his working hours were recorded through the phone system. Plaintiff was required to

2

"clock in" when he arrived for work, to clock in and out for lunch and for breaks and to clock out at the end of the day. At times, Plaintiff worked remotely and the time was not recorded by Defendant.

11. At the direction of upper management, Plaintiff's supervisor regularly changed the hours recorded to reflect a workweek of only 40 hours. Plaintiff and others repeatedly complained to their supervisor about the failure to pay them overtime for hours they worked each week beyond 40.

12. Plaintiff's duties were of a strictly clerical nature and did not meet any of the criteria allowing for exemption from the requirements for overtime compensation payments established under either the FLSA or § 31-68(a). Plaintiff's primary duties included:

   a. Daily review of computer reports including an Un-Commenced Lease Report, Lease Conflict Report, Stuck Lease Report, Dealer Funded Report and Seibel Case Report. These reports showed the status of Defendant's equipment leases. The purpose of this review was to identify any billing, paperwork transmittal or similar problems that existed with any of Defendant's equipment leases for presentation to higher management for resolution. Identification of problems involved only application of policies, practices and procedures developed by others in the Defendant company which Plaintiff had no authority to alter, suspend or augment. In no case did Plaintiff have authority to change, modify or grant exceptions to any Defendant policy or practice in order to resolve any billing issues made apparent during this daily review. Plaintiff had to obtain higher management authorization for any such action as is described below.

   b. Once the review described in ¶ 15a was done, Plaintiff would make calls to the branches and dealers to determine why the difficulties that had been discovered in the course of the report review existed. In collecting this information, again, Plaintiff followed prescribed Defendant policies, practices and procedures; he had no discretion or authority to grant exceptions to policy requirements or modify policies, practices and procedures regarding the required information in any way. Once the branch and dealer calls were completed, Plaintiff would update the reports described in ¶ 13a based on the information obtained in those telephone calls and then forward those updated reports to the Director of Leasing, Plaintiff's own supervisor, the other Sr. Lease Administrator (Team Lead) personnel and Leasing Administrator Felicia Wilson.

3

    c. Almost daily an approximately one hour meeting was held with the Director of Leasing and the Sr. Lease Administrator (Team Lead) personnel, Leasing Supervisor (Kristen Zimmerman) and one Leasing Administrator (Felicia Wilson) to discuss the issues that had been uncovered during the computer review and through the telephone calls to branches and dealers described above.

    d. Following the meeting described in ¶ 13c, Plaintiff would prepare written requests ("Re-book Forms") for approval to re-book the leases that were identified as having errors or conflicts. Plaintiff would complete the re-book forms and send them, along with back-up paperwork, to the Director of Leasing for approval of any necessary changes to the lease paperwork.

    e. Plaintiff would also, when called upon, enter data into the computer system that was required to complete an order; data regarding mark-up, meter rental cost, rate charges for the order and other informational items that were necessary to activate the customer's account. Once the proper data was entered into the computer system, the Order Management Department would arrange to send the equipment to the customer.

    f. In exercising the duties listed above, Plaintiff exercised no independent judgment, had no discretion to make or change Defendant policies, practices or procedures and was directly supervised as to every aspect of his work.

  13. In January 2012, Plaintiff was diagnosed with hypertension and requested FMLA leave. He received leave and was out from January 18, 2012 for approximately six or seven weeks and then returned to work.

  14. Plaintiff's 2009 job performance was formally reviewed with him on February 25, 2010. That performance was rated as 4.2 out of a possible 5.0.

  15. Plaintiff's 2010 job performance was formally reviewed with him on March 1, 2011. That performance was rated as 4.2 out of a possible 5.0.

  16. Plaintiff's 2011 job performance was formally reviewed with him on March 21, 2012. That performance was rated as 2.2 out of a possible 5.0.

  17. After several years' acceptable service, Plaintiff's work performance was judged to be inadequate after his return from his 2012 FMLA Leave of absence. There were several discussions between Plaintiff and his supervisor about perceived work performance deficiencies after he returned from his 2012 leave. Plaintiff's supervisors met with and rebuked him on

December 13, 2012, issued him a written warning on January 7, 2013 and issued him a second written warning on January 17, 2013. Both of those written warnings threatened Plaintiff with dismissal from his job.

18. Plaintiff's hypertension condition continued to Defendant's knowledge throughout 2012 and on into 2013. Defendant was kept aware of the status of the continued hypertension problem as a result of Plaintiff's supervisors' inquiries about the condition. Plaintiff worked over 1250 hours after his return from FMLA leave in 2012.

19. On January 23, 2013 Plaintiff was admitted to Griffin Hospital in Derby, Connecticut for hypertension. He remained in the hospital through January 25, 2013.

20. Plaintiff sent Defendant a physician's note dated January 23, 2013 noting that Plaintiff was not cleared to work "until further notice". A copy of the January 23rd physician's note is attached as Exhibit 1 and incorporated herein. Plaintiff was not cleared to return to work prior to his termination from employment by Defendant.

21. Defendant sent Plaintiff an FMLA "Request for Leave" form ("Request") and "Certification of Health Care Provider" ("Certification") by letter dated January 24, 2013. A copy of the January 24th letter is attached as Exhibit 2 and incorporated herein. The letter stated that the Certification was due back to Defendant by February 8, 2013 or that Plaintiff needed to provide "a reasonable explanation for the delay" if it was not. The letter said that the Request was due back to Defendant "as soon as possible". Plaintiff received this letter on January 25, 2013.

22. Plaintiff's physician was unable to complete and return the Certification to Defendant by February 8, 2013. Plaintiff had a doctor's appointment scheduled for February 8th to complete the form so it could be returned, but the appointment was cancelled as the result of extremely inclement weather. Plaintiff rescheduled the appointment for a date as near in the future as it was possible to do so.

23. Defendant sent Plaintiff a letter, dated February 11, 2013 separating him from its employment by reason of his alleged voluntary quit due to job abandonment as of that date. A copy of the February 11, 2013 letter is attached as Exhibit 3 and incorporated herein.

24. By email dated February 20, 2013, Plaintiff notified Defendant that it had made a mistake; he had not abandoned his job, and asked that he be reinstated. By email of the same

date, Defendant denied his request for reinstatement. A copy of the email chain between Plaintiff and Defendant is attached as Exhibit 4 and incorporated herein.

## VI.   COUNT ONE:  Violation of FLSA

Paragraphs 1-12 of Parts I through V of this Complaint are re-alleged herein as paragraphs 1–12 of Count One.

13. Defendant's failure to pay Plaintiff overtime wages during his period of tenure in the position of Sr. Lease Administrator (Team Lead) was a failure to pay wages due under the FLSA for all hours worked in excess of 40 per week.

14. Defendant's wrongful failure to pay wages as alleged in ¶¶ 1–18 of this Count One was willful in that Defendant was at all times aware of its obligations to pay over time to those holding the position of Sr. Lease Administrator (Team Lead) in an amount of 1 and ½ times their regular wage rate.

15. As a result of Defendant's illegal failure to pay wages in accordance with the requirements of the FSLA, Plaintiff has suffered economic damages.

## VII.   COUNT TWO:  Violation of § 31-68(a)

Paragraphs 1-12 of Parts I through V of this Complaint are re-alleged herein as paragraphs 1-12 of Count Two.

13. Defendant's failure to pay Plaintiff overtime wages during his period of tenure in the position of Sr. Lease Administrator (Team Lead) was a failure to pay wages due under § 31-68(a) for all hours worked in excess of 40 per week.

14. Defendant's wrongful failure to pay wages as alleged in ¶¶ 1–18 of this Count Two was willful in that Defendant was at all times aware of its obligations to pay over time to those holding the position of Sr. Lease Administrator (Team Lead) in an amount of 1 and ½ times their regular wage rate.

15. As a result of Defendant's illegal failure to pay wages in accordance with the requirements of § 31-68(a), Plaintiff has suffered economic damages.

## VIII.   COUNT THREE:  FLSA Retaliation

Paragraphs 1-5, 7-12, 14-17 and 23-24 of Parts I through V of this Complaint are re-alleged herein as paragraphs 1–17 of Count Three.

18. Defendant disciplined and then terminated Plaintiff in retaliation for his filing internal complaints regarding the Defendant's failure to pay overtime in accordance with its FLSA obligations.

19. As a result of Defendant's illegal, retaliatory, disciplinary actions and termination of Plaintiff, Plaintiff has suffered economic damages and emotional damages.

## IX. PRAYER FOR RELIEF

Wherefore, the Plaintiff respectfully prays that this Court take jurisdiction over this case and grant judgment against the Defendant. Plaintiff prays that the following relief be awarded:

A. Under Counts One and Two:
1. Lost wages in the form of overtime pay for all hours worked in excess of 40 per week throughout his service as Sr. Lease Administrator (Team Lead) personnel;
2. Liquidated damages in the form of a doubling of any lost wages awarded pursuant to Counts One and Two;
3. Pre-judgment and post-judgment interest on their economic losses;
4. Reasonable attorneys' fees and costs;
5. Any and all other legal or equitable relief that may be appropriate to the law and circumstances of the case and evidence.

B. Under Count Three:
1. The economic losses, including lost benefits that he has suffered as a result of Defendant's conduct;
2. Liquidated damages in the form of a doubling of any economic losses that he has suffered as a result of Defendant's conduct;
3. Pre-judgment and post-judgment interest on his economic losses;
4. Reasonable attorneys' fees and costs;
5. Any and all other legal or equitable relief, including, but not limited to, compensatory and punitive damages, that may be appropriate to the law and circumstances of the case and evidence.

RESPECTFULLY SUBMITTED,

THE PLAINTIFF

By:  /s/ Robert B. Mitchell
Robert B. Mitchell (ct02662)
Jessica A. Slippen (ct25765)
Mitchell & Sheahan, P.C.
80 Ferry Blvd., Suite 102
Stratford, CT 06615
(203) 873-0240
(203) 873-0235 (fax)

Counsel for Enrique Ojeda

## **CERTIFICATION**

I hereby certify that on October 20, 2015, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be served by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.

/s/ Jessica A. Slippen<br>
Jessica A. Slippen